UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Leonard C. Onyiah,

                    Plaintiff,                          Court File No. 16-cv-4111 (JRT/LIB)

        v.
                                                        **REPORT AND RECOMMENDATION**

St. Cloud State University and Board of
Trustees, et al.,

                    Defendants.

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral, [Docket No. 23], made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), and upon Defendants' Motion to Dismiss, [Docket No. 18]. This Court held a Motion Hearing on July 24, 2017, and Defendants' Motion to Dismiss was taken under advisement thereafter. (See, Minute Entry, [Docket No. 37]).

For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 18], be **GRANTED IN PART AND DENIED IN PART**.

## I.    BACKGROUND  AND STATEMENT OF ALLEGED FACTS[1]

Plaintiff Leonard Onyiah is a black man who was born in Nigeria. (Amend. Compl., [Docket No. 15], 2). He has been a Professor of Statistics at St. Cloud State University ("SCSU") since 1998, and he was the Chair of the Department of Statistics and Computer Networking prior to that department's absorption into other departments. (Amend. Compl., [Docket No. 15], 3).

---

[1] For the purposes of the present Motion to Dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the operative Amended Complaint, [Docket No. 15], as true and construes them in the light most favorable to Plaintiff. See, Riley, 153 F.3d at 629 (citing Double D Spotting Serv., Inc., 136 F.3d at 556).

Defendants are Pieyi Zhao, a Chair of the Mathematics/Statistics Department at SCSU; Daniel Gregory, the Dean of the College of Science and Engineering at SCSU; Dale Buske, a Chair of the Mathematics/Statistics Department at SCSU; Melissa Hanszek-Brill, a faculty member at SCSU; and Ellyn Bartges, the Equity and Affirmative Action Officer at SCSU. (Id. at 1).[2]

Plaintiff has previously filed internal complaints of employee discrimination, and he has pursued at least one prior discrimination complaint through both the EEOC and federal court litigation. (Id.); see, also, Onyiah v. St. Cloud State Univ., et al., 684 F.3d 711 (8th Cir. 2012). In that previous case, Plaintiff "sued St. Cloud State University and the Board of Trustees of Minnesota State Colleges and Universities (collectively, the University) for wage discrimination based on race, national origin, and age." Id. at 714. The District Court of Minnesota granted summary judgment to the University, and on July 2, 2012, the Eighth Circuit affirmed. Id.

On or about October 21, 2013, Plaintiff filed an internal discrimination complaint at SCSU, and in the case now before the Court, he alleges that the Eighth Circuit decision in July 2012, combined with his internal complaint in October 2013, motivated Defendants to create a hostile work environment and unlawfully retaliate against him. (Amend. Compl., [Docket No. 15], 3-4). In support of his claims, Plaintiff relates multiple incidents, which are set forth here in chronological order.

In approximately November 2013, Plaintiff states that he requested that SCSU review his salary, "to bring [the] same in line with professors of his experience and stature within SCSU."

---

[2] Plaintiff initially also brought claims against Defendant St. Cloud State University and Board of Trustees and Defendant Minnesota State Colleges and Universities, [Docket No. 1], but on the record at the July 24, 2017, Motion Hearing, Plaintiff's counsel informed the Court that Plaintiff does not oppose dismissal of those claims, and Plaintiff intends to pursue only his claims against the individual named Defendants. (July 24, 2017, Motion Hearing, Digital Record, 2:56-58). Accordingly, based upon Plaintiff's counsel's representations at the July 24, 2017, Motion Hearing, the Undersigned recommends that all of Plaintiff's claims against Defendant St. Cloud State University and Board of Trustees and Defendant Minnesota State Colleges and Universities **be dismissed with prejudice**.

(Id. at 17). In December 2013, the Provost and the President of SCSU informed Plaintiff that no salary adjustment was warranted; they specifically stated that the results of the prior litigation had concluded that there was no need to adjust Plaintiff's salary. (Id. at 18).

Next, Plaintiff maintains he "had long been scheduled" to teach a certain statistics class (STAT 193) in the spring semester of 2014. (Id. at 4). However, in December 2013, Defendants Gregory, Buske, and Hanszek-Brill "orchestrated" the reassignment of STAT 193 from Plaintiff to a white teacher with less experience teaching the class. (Id. at 2, 4). Defendants Gregory, Buske, and Hanszek-Brill also "campaign[ed]" against other faculty members using Plaintiff's published statistics textbook in their statistics courses, and "Defendants"[3] made "false, derogatory, and painful statements about [Plaintiff's] pedagogy" and about Plaintiff's capability to manage his classes without help from Hanszek-Brill. (Id. at 5-6). Plaintiff was also asked on "very short notice" to teach STAT 417. (Id.). Moreover, on or about December 18, 2013, Plaintiff's STAT 193 class was capped at 37 students and his suggestion of an alternate arrangement was rejected by Defendant Gregory. (Id. at 5).

Also in December 2013, Defendants Gregory, Buske, and Hanszek-Brill are alleged to have denied Plaintiff the opportunity to continue using Learning Assistants: a practice which Plaintiff had been successfully using since 2008, a practice which Plaintiff had implemented prior to any other faculty member at SCSU, and one for which Plaintiff had received specific training. (Id. at 5-6). Defendants are said to have asserted in statements published to the entire department and placed in a shared computer drive that Plaintiff had submitted an "incompetent" application for the use of Learning Assistants. (Id. at 6). When Plaintiff complained about the situation to Defendant Bartges, she did nothing. (Id.).

---

[3] Plaintiff does not specify which Defendants made these comments. (Amend. Compl., [Docket No. 15], 6).

On another occasion, while Plaintiff was on sabbatical[4] in Nigeria, he was again denied the opportunity to use Learning Assistants, while other faculty members with similarly sized classes allegedly were not. (Id.). Prior to the denial, Defendants had not informed Plaintiff of the application period for the use of Learning Assistants. (Id. at 7). When Plaintiff returned from his sabbatical, he requested assignment of Learning Assistants, but Defendant Gregory "refused [the request] without any rational explanation." (Id. at 7).

SCSU participated in a program called "Senior to Sophomores ('S2S')," which appears to be a mentorship program in which high school teachers are mentored by SCSU faculty. (See, Id. at 7-8). SCSU has a historical practice of allowing faculty on sabbatical leave to continue in their S2S mentorship roles and thereby earn extra money while on leave, but on or about February 26, 2014, Defendants Buske and Gregory "and their collaborators" denied Plaintiff the opportunity to participate in the S2S program while he was on sabbatical leave during the 2014/2015 academic year. (Id. at 7). Instead, Defendants Zhao and Gregory purportedly assigned Plaintiff's three S2S classes to a white faculty member. (Id. at 8).

In March 2014, Plaintiff filed an internal complaint about the foregoing S2S situation with Defendant Bartges who eventually responded that the "complaint did not qualify to be treated as an employment discrimination complaint." (Id. at 9). Nevertheless, Plaintiff believed that his S2S classes would be restored to him upon his return from his 2014/2015 sabbatical. (Id. at 8). However, when Plaintiff returned from that sabbatical, the S2S classes are alleged not to have been restored to him, and he learned that Defendants Gregory and Zhao had "supported" the passage of a resolution that teachers at the participating high schools would decide which SCSU professor to work with in the S2S program. (Id. at 8). All of the S2S high school teachers

---

[4] Plaintiff does not identify within his Amended Complaint an approximate date for this sabbatical. (Amend. Compl., [Docket No. 15], 6).

(whom Plaintiff points out were all white), chose to work with a white SCSU faculty member instead of Plaintiff. (Id.). When Plaintiff complained, two of the S2S classes were restored to him, but after one semester, one of those classes was eliminated altogether. (Id. at 9).

In addition, Defendants Zhao and Gregory created Plaintiff's teaching schedule for the Spring 2016 semester without consulting Plaintiff, allegedly in violation of the applicable Collective Bargaining Agreement and departmental rules. (Id. at 11). This resulted in Plaintiff being scheduled for the 2016 Spring semester to teach three classes (of 75-minute duration) on Tuesdays and Thursdays; without sufficient breaks between classes. (Id.). Plaintiff appealed to Defendants Gregory and Zhao for permission to switch classes with another faculty member, but Defendant Gregory is reported to have rejected the request stating that students have a right to be taught by the faculty who is designated at registration as the one assigned to teach that class. (Id. at 12).

SCSU designates some courses as "on-load" courses and some as "package" courses. (Id. at 10). An on-load course is "taught as part of the contracted 12 credits per [s]emester" and does not result in extra pay for the instructor, while package courses are compensated beyond the contract and the instructor is paid per student. (Id.). In the Spring 2016 semester, Plaintiff was scheduled to teach STAT 424 as an on-campus, on-load course as well as STAT 193 as an online, package course. (Id.). An insufficient number of students registered for STAT 424, but Defendant Gregory did not assign Plaintiff to teach an additional on-load course, although such courses were available. (Id.). Defendant Gregory allegedly "ignored or rejected" Plaintiff's request for another on-campus, on-load course. (Id. at 11). Instead, Defendants Gregory and Zhao reclassified 30 of the students enrolled in the STAT 193 online, package course as instead being considered to be in an on-load course; thus, leaving Plaintiff to be paid package-course

rates only for the remaining 12 students in the class. (Id. at 10). Plaintiff was purportedly the only faculty member in the Department of Mathematics and Statistics whose package course was partially converted to an on-load course. (Id. at 11). A letter of complaint Plaintiff sent to the Provost of SCSU brought no change. (Id)

Defendant Gregory is described as also declining to allocate funding for online courses to be taught in the summer of 2016. (Id. at 13). Plaintiff, Defendant Buske, and Defendant Hanszek-Brill were the only faculty members who regularly taught online courses during the summers. (Id.). Instead, Defendant Gregory arranged on-campus courses for Defendants Buske and Hanszek-Brill to teach in place of online courses that summer, but he allegedly did not arrange an on-campus course for Plaintiff. (Id.).

On February 8, 2016, the Department of Mathematics and Statistics resolved that three classes (MATH 112, MATH 193, and STAT 193) would be offered online during the Fall 2016 semester and would be compensated as "overload."[5] (Id. at 13). Defendant Gregory accepted the resolution, but he is described by Plaintiff as capping enrollment in MATH 112 and MATH 193, which were taught by Defendants Buske and Hanszek-Brill, at 40 students, but he capped enrollment in STAT 193, which was taught by Plaintiff, at 60 students. (Id. at 14). A meeting to discuss objections to the different enrollment caps was held on April 4, 2016, and Plaintiff states that he was excluded from this meeting; further, he asserts that it resulted in the cancellation of his online STAT 193 class altogether while retaining the online MATH 112 and MATH 193 classes. (Id.). Moreover, Defendant Zhao notified Plaintiff the same day that the two on-campus STAT 193 classes would now be capped at an "unprecedented" high of 130 students each. (Id.). When Plaintiff asked for an explanation, Defendant Zhao did not clarify for Plaintiff why his online STAT 193 class was cancelled. (Id. at 15).

---

[5] There is no explanation of the term "overload" in the Amended Complaint.

At a subsequent Departmental meeting on April 11, 2016, Plaintiff again asked why his STAT 193 class was cancelled but the MATH 112 and MATH 193 classes taught by others were not. (Id. at 15). During the meeting, Defendant Buske would allegedly not allow Defendant Zhao to answer Plaintiff's questions, and Buske repeatedly interrupted Zhao when she attempted to do so. (Id.). Defendant Buske indicated that he was the one who should answer the question since he had experience in scheduling. (Id.). Other faculty members yelled angrily at Plaintiff, and Defendant Buske is said to have left the meeting "in obvious anger and frustration." (Id. at 16-17). Thereafter, a complaint was filed by unknown persons with SCSU regarding Plaintiff's behavior at the April 11th meeting, and Plaintiff was investigated through SCSU's disciplinary process. (Id. at 17).

## I.    PROCEDURAL HISTORY

On December 8, 2016, Plaintiff commenced the present action by filing his original Complaint *pro se* in this Court; he alleged that Defendants violated his rights under the First Amendment to the United States Constitution, leading to federal claims under 42 U.S.C. §§ 1981 and 1983 and the Minnesota Human Rights Act.[6] (Compl., [Docket No. 1]).

On April 19, 2017, Defendants filed a joint Motion to Dismiss the original Complaint, [Docket No. 4].[7]

On April 24, 2017, Plaintiff filed a *pro se* Amended Complaint, [Docket No. 15]. As narrowed at the July 24, 2017, Motion Hearing, Plaintiff therein brings claims against Defendants Zhao, Gregory, Buske, Hanszek-Brill, and Bartges in both their individual and official capacities "under 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1983, First Amendment to the United States Constitution, [and] the Equal Protection

---

[6] Because that original Complaint is no longer the operative Complaint, the allegations therein are not detailed here.
[7] Defendants withdrew this Motion on the record at the July 24, 2017, Motion Hearing. (See, Minute Entry, [Docket No. 37]).

Clause." (Id. at 1; July 24, 2017, Motion Hearing, Digital Record, 2:55-59).[8] Plaintiff seeks compensatory damages of $5,000,000.00 for each of his nine causes of action, punitive damages against the individual Defendants, a permanent injunction preventing Defendants from further discrimination or retaliation against Plaintiff, attorney's fees, and costs. (Id. at 18-19).

On May 8, 2017, Defendants filed a Motion to Dismiss the Amended Complaint, [Docket No. 18], which was thereafter referred to this Court for a Report and Recommendation, [Docket No. 23].

On June 30, 2017, counsel entered an appearance on behalf of Plaintiff, [Docket No. 30], and filed Plaintiff's Memorandum in Opposition to Defendants' second Motion to Dismiss, [Docket No. 32]. Defendants filed their Reply Memorandum on July 14, 2017. ([Docket No. 36]).

## II.     DEFENDANTS' MOTION TO DISMISS, [Docket No. 18]

### A.  Standards of Review

*Pro se* complaints are construed liberally, but they still must allege sufficient facts to plausibly support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). A Complaint drafted and filed by a *pro se* party is afforded such liberal construction even if the party is later represented by counsel. See, Sneh v. Bank of New York Mellon, No. 12-cv-954 (MJD/JSM), 2012 WL 5519690, *5 (D. Minn. Oct. 30, 2012) (applying liberal construction to a complaint which was filed by plaintiffs *pro se* but plaintiffs later retained counsel to represent

---

[8] In his Amended Complaint, Plaintiff also asserts claims under the Minnesota Human Rights Act, § 363A.01, et seq. However, on the record at the July 24, 2017, Motion Hearing, Plaintiff's counsel clarified that Plaintiff does not oppose dismissal without prejudice of his claims under the Minnesota Human Rights Act. (July 24, 2017, Motion Hearing, Digital Record, 2:55-58). Accordingly, based upon Plaintiff's counsel's representations at the July 24, 2017, Motion Hearing, the Undersigned recommends that Plaintiff's claims under the Minnesota Human Rights Act be **dismissed without prejudice**.

them at the hearing on the motion to dismiss); <u>see</u>, <u>also</u>, <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) ("A document <u>filed</u> *pro se* is 'to be liberally construed.'" (Emphasis added.)).

When considering a motion to dismiss under Rule 12(b)(6), courts "look only to the facts alleged in the complaint and construe those facts in the light most favorable to the plaintiff." <u>Riley v. St. Louis Cty. of Mo.</u>, 153 F.3d 627, 629 (8th Cir. 1998) (citing <u>Double D Spotting Serv., Inc. v. Supervalu, Inc.</u>, 136 F.3d 554, 556 (8th Cir 1998)), <u>cert. denied</u> 525 U.S. 1178 (1999). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. <u>Aten v. Scottsdale Ins. Co.</u>, 511 F. 3d 818, 820 (8th Cir. 2008). Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007).

The complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556-57). When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. <u>See</u>, <u>Iqbal</u>, 556 U.S. at 678-81.

## B. Analysis

Defendants move the Court for dismissal of Plaintiff's Amended Complaint in its entirety for failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. ([Docket No. 18]).

At the July 24, 2017, Motion Hearing, Plaintiff's counsel clarified for the Court that Plaintiff's claims are based upon his contention that the actions alleged in the Amended Complaint were based on unlawful discriminatory or retaliatory motives. (July 24, 2017, Motion Hearing, Digital Record, 3:15-16). When the Court asked Plaintiff's counsel to further clarify the basis for each Cause of Action, Plaintiff's counsel stated that the legal theories are distinct within each Cause of Action and can be determined from the four corners of the Amended Complaint. (Id. at 3:15-18). The bases for the claims in the operative Amended Complaint, as narrowed at the July 24, 2017, Motion Hearing[9], are: "42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1983[; the] First Amendment to the United States Constitution[; and] the Equal Protection Clause." (Amend. Compl., [Docket No. 15], 1). Moreover, at this juncture, Plaintiff's claims as narrowed are brought only against the individual, named Defendants in their individual and official capacities.

### 1. 42 U.S.C. § 1981 Claims

42 U.S.C. § 1981 protects the right of an individual in the United States to "make and enforce contracts" regardless of his or her race. The United States Supreme Court has explicitly held that "§ 1981 encompasses retaliation claims." See, CBOCS West, Inc. v. Humphries, 533 U.S. 442, 446 (2008). Furthermore, the amendments to § 1981 included in the Civil Rights Act of 1981 made clear that "the term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits,

---

[9] See fns, 2 and 8, supra.

privileges, terms, and conditions of the contractual relationship." See, Id. at 450 (quoting 42 U.S.C. 1981(b).

However, "'[a] federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983.'" Delgado-O'Neil v. City of Minneapolis, 745 F. Supp. 2d 894, 901 (D. Minn. 2010) (quoting Artis v. Francis Howell N. Band Booster Ass'n, Inc., 161 F.3d 1178, 1181 (8th Cir. 1998)). It is undisputed that St. Cloud State University is an arm of the State of Minnesota and, as such, its employees are state officials. See, Breaker v. Bemidji State Univ., ___ N.W.2d ___, 2017 WL 2535724, *4 (Minn. 2017) (noting that entities statutorily designated in Minn. Stat. § 136F.10 as members of Minnesota State Colleges and Universities are state agencies); Minn. Stat. § 136F.10 (designating SCSU as a member of Minnesota State Colleges and Universities); see, also, e.g., Davenport v. Bd. of Trs. of the Univ. of Ark. at Pine Bluff, No. 10CV00023 BSM, 2011 WL 900095, *2 (E.D. Ark. March 14, 2011) (classifying defendant employee of state university as "a state official"); James v. Bd. of Curators of the Univ. of Mo., No. 09CV2066 RWS, 2011 WL 147910, *3 n.3 (E.D. Mo. Jan. 18, 2011) (same). Accordingly, Plaintiff may not properly assert a retaliation claim directly under § 1981 against Defendants, as they are state actors; Plaintiff must bring his retaliation claims under 42 U.S.C. § 1983.

Therefore, to the extent that Plaintiff intends to pursue retaliation claims against the remaining individually named Defendants the Plaintiff must do so under § 1983 and not under § 1981. Accordingly, the Court recommends that all § 1981 claims for retaliation be **dismissed with prejudice**.

## 2. <u>Monetary and Punitive Damages for Official Capacity Claims</u>

In their Memorandum in Support of their Motion to Dismiss, Defendants argue that as a matter of law, Plaintiff is wholly barred from bringing suit under § 1983 against the remaining named Defendants in their official capacities. ([Docket No. 20], 5-6). To the extent that Plaintiff is seeking monetary damages against Defendants in their official capacities, the Court agrees that monetary damages are not recoverable under § 1983. <u>See, e.g.</u>, <u>Karsjens v. Jesson</u>, 6 F. Supp. 3d 916, 941 (D. Minn. 2014) (citing <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989), and <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974)).

Official-capacity claims "generally represent only another way of pleading an action against the entity of which an officer is an agent," and "[s]uits against state officials in their official capacity therefore should be treated as suits against the State." <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991) (citations and quotations omitted). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983," and thus monetary relief is not available under § 1983 from state employees in their official capacity. <u>See</u> <u>Will</u>, 491 U.S. at 71. In addition, the government and its officials are immune from punitive damages under § 1983 because "considerations of history and policy do not support exposing a [state] to punitive damages for the bad-faith actions of its officials." <u>See</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981). Plaintiff will not be able to recover either monetary relief or punitive damages from Defendants in their official capacities; therefore, the Court recommends that to the extent Plaintiff seeks to recover monetary relief or punitive damages from the remaining named Defendants in their official capacities, Plaintiff's § 1983 claims **be dismissed with prejudice**.[10]

---

[10] However, "suits <u>may</u> be brought in federal court against state officials in their official capacities for prospective injunctive relief to prevent future violations of federal law." (Emphasis added.) <u>Fond du Lac Band of Chippewa Indians v. Carlson</u>, 68 F.3d 253, 255 (8th Cir. 1995) (citing <u>Ex Parte Young</u>, 209 U.S. 123 (1908)). Accordingly, to

### 3. Personal Involvement

Defendants also argue that Plaintiff has failed to sufficiently allege each Defendant's personal involvement in the alleged unconstitutional acts. (Mem. in Supp., [Docket No. 20], 7-12).

"To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." Jackson v. Nixon, 747 F.3d 537, 543 (8th Cir. 2014) (citing Iqbal, 556 U.S. at 676)). Thus, to survive Defendants' current Motion to Dismiss, Plaintiff in the present case must have alleged each individually named Defendant's personal involvement in the asserted First Amendment retaliation and equal protection violations due to racial discrimination with "more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." See, Twombly, 550 U.S. at 555. Whether Plaintiff has done so sufficiently is addressed in the analysis of each individual Cause of Action, below.

### 4. Sufficiency of the Amended Complaint

The Court will address each Cause of Action in turn, but first it would be helpful to set forth the general law relevant to pleading claims of retaliation or racial discrimination sufficiently to survive a Rule 12(b)(6) Motion to Dismiss such as the one presently before the Court. Retaliation claims and racial discrimination claims do not require the same factual allegations.

For example, Defendants argue that Plaintiff has failed to allege facts sufficient to support any plausible remaining claim for relief under 42 U.S.C. § 1983 because he did not "detail any facts linking either his history of litigation against SCSU . . . or his purported October

---

the extent the Plaintiff alleges any underlying § 1983 claims for discrimination and retaliation against any of the remaining named Defendants, his prayer for injunctive relief against them in their official capacities would survive.

2013 internal complaint to any of the decisions about which he complains." (Mem. in Supp., [Docket No. 20], 7). However, only Plaintiff's claims of retaliation in violation of the First Amendment require a showing of such retaliatory motivation.

> To plead a prima facie case of First Amendment retaliation, [a plaintiff] must allege that (1) he engaged in activity protected by the First Amendment; (2) the defendants took an adverse employment action against him; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action.

Lyons v. Vaught, 781 F.3d 958, 961 (8th Cir. 2015).[11]

Specifically relevant to Plaintiff's retaliation claims, Defendants do not argue that filing a civil lawsuit and lodging an internal employment discrimination complaint are not activities protected by the First Amendment. (See, Mem. in Supp., [Docket No. 20], 7-12). Moreover, it is clear that "[t]he First Amendment protects a person's right to file a lawsuit." Taylor v. Bailey, 617 Fed. Appx. 615, 617 (8th Cir. 2015) (citing Beaulieu v. Ludeman, 690 F.3d 1017, 1025 (8th Cir. 2012)).[12] Rather, Defendants focus their arguments on their assertion that Plaintiff has not pled facts sufficient to plausibly allege adverse employment action and that Plaintiff has similarly failed to plead facts sufficient to support a plausible claim that the decision to make any

---

[11] The Eighth Circuit has recently recognized that there are "two possible frameworks for evaluating First Amendment retaliation claims." See, DePriest v. Milligan, 823 F.3d 1179, 1187 n.4 (8th Cir. 2016) (discussing First Amendment retaliation claims under § 1983 while reviewing an order granting summary judgment). The difference between the two frameworks is mainly in the burden which shifts to an employer if a plaintiff makes a prima facie showing of retaliation. See, Id. For the purposes of the current Rule 12(b)(6) analysis, however, the only difference is that one framework (set forth above) requires a plaintiff to show that "the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse employment action," while the other requires a plaintiff to show that "a causal connection exists" between the protected conduct and the adverse employment action. Because "a causal connection" is necessarily sufficiently pled in the Amended Complaint if Plaintiff has pled sufficient facts to plausibly allege that the protected conduct was "a substantial or motivating factor," this Court does not further discuss the two frameworks separately.

[12] It is less clear whether Plaintiff's filing of an internal discrimination complaint is protected conduct under the First Amendment. See, Matory v. Mason, No. 3:16CV989TSL-RHW, 2017 WL 2656635, *4-6 (S.D. Miss. June 19, 2017) (listing cases with various holdings on whether internal complaints by public employees are protected conduct and/or speech under the First Amendment). In the present instance, however, the Court need not determine the protected (or unprotected) status of Plaintiff's internal complaint, since Defendants do not challenge the sufficiency of Plaintiff's Amended Complaint with respect to the sufficiency of Plaintiff's allegations of conduct protected by the First Amendment.

of the purported adverse employment decisions was motivated by a retaliatory intent. (See, Mem. in Supp., [Docket No. 20], 7-12).

In contrast, what Plaintiff terms as his "straight discrimination claim," (see, Mem. in Opp., [Docket No. 32], 7)—his claims brought under § 1983 which alleges violation of the Equal Protection Clause of the Fourteenth Amendment—does not require the same showing of retaliatory motive. As the Eighth Circuit has explained:

> "[T]he Equal Protection Clause requires that the government treat such similarly situated persons alike." Absent evidence of direct discrimination, courts apply the McDonnell Douglas burden-shifting analysis to claims of employment discrimination under the Equal Protection Clause. Under McDonnell Douglas, a prima facie case of discrimination requires that a plaintiff prove: "(1) membership in a protected group; (2) qualification for the job in question; (3) an adverse employment action; and (4) circumstances that support an inference of discrimination."
> . . . .
> . . . [A] plaintiff need not plead facts establishing a prima facie case of discrimination under McDonnell Douglas in order to defeat a motion to dismiss. The complaint "must contain only 'a short and plain statement of the claim showing the pleader is entitled to relief.'" "Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"

Hager v. Ark. Dept. of Health, 735 F.3d 1009, 1014 (8th Cir. 2013).

Therefore, while the Court will consider Defendants' argument regarding the sufficiency of alleged retaliatory intent in conjunction with Plaintiff's retaliation claims, that argument has no bearing on the sufficiency of pleading with regard to Plaintiff's separate racial and national origin discrimination claims.

Moreover, despite Plaintiff's counsel's reassurances at the July 24, 2017, Motion Hearing, the legal basis for each Cause of Action is not entirely clear from the Amended Complaint. However, because Plaintiff was *pro se* when he drafted and filed the Amended Complaint, the Court will construe the Amended Complaint liberally. Accordingly, for those

Causes of Action which do not explicitly identify whether they are retaliation claims or discrimination claims, the Court will draw all reasonable inferences in Plaintiff's favor to determine the legal basis for the claims.

### a. First Cause of Action

Plaintiff bases his First Cause of Action on the following alleged facts: In December 2013, Defendant Gregory assigned Nancy Sundheim, a white female faculty member with less experience, to teach a statistics class which Plaintiff had long been scheduled to teach and which Plaintiff had the most experience teaching when compared to other faculty within the department. (Amend. Compl., [Docket No. 15], 4-5). Because of the class reassignment, Plaintiff was denied the opportunity to earn royalties from the use of his book in teaching the class. In addition, Plaintiff was asked to teach a different, higher-level statistics class on very short notice, and the enrollment in his lower-level statistics class was capped at 37 students by Defendant Buske. (Id. at 5). When Plaintiff suggested an alternate arrangement, Defendant Gregory refused to approve it. Plaintiff also alleges that Defendants Gregory, Hanszek-Brill, and Buske campaigned against the use of Plaintiff's book being used by others to teach statistics. (Id.).

Plaintiff contends that these actions by Defendants Gregory, Haszek-Brill, and Buske, were taken "in retaliation for . . . bringing an earlier lawsuit . . . [, Plaintiff's] filing of a formal complaint of employment discrimination in October 2013 . . . [, and Plaintiff's] continuing complaint[s] about [D]efendants' employment discrimination and harassment against him." (Amend. Compl., [Docket No. 15], 5).

As Defendants point out, "'[n]ot everything that makes an employee unhappy is an actionable adverse employment action.'" (See, Mem. in Supp., [Docket No. 20], 8 (quoting Henthorn v. Capital Comm's, Inc., 359 F.3d 1021, 1028 (8th Cir. 2004)).

To constitute an adverse employment action for purposes of a retaliation claim, such adverse action must be considered material—that is such action would have dissuaded a reasonable worker from engaging in the protected activity. . . . "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." In deciding whether an adverse action is material, such action must be looked at in context. "'The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical act performed.'"

(Citations omitted.) <u>Delgado-O'Neil</u>, 745 F. Supp. 2d at 901.

Accepting Plaintiff's factual allegations as true, as the Court must do in the context of the present Rule 12(b)(6) Motion to Dismiss, the actions by Defendants Gregory, Buske, and Hanzek-Brill cost Plaintiff the opportunity to use the textbook he authored in his own classes and in classes taught by others as he had long anticipated, which necessarily impacted Plaintiff financially because he lost the royalties that he would have earned from the use of the textbook he authored. In addition, Plaintiff was denied the opportunity to teach a class he had long planned on teaching. Such impact has been recognized by the Eighth Circuit as being, under certain circumstances, sufficient to show an adverse employment action. <u>See</u>, <u>Henthorn</u>, 359 F.3d at 1028 ("Each action claimed to be retaliatory must be sufficiently adverse to have created a material change in the employment, '<u>such as a change in salary, benefits, or responsibilities</u>.'") (Emphasis added.)). Finally, the Court concludes that Defendant has sufficiently alleged personal involvement by Defendants Gregory, Buske, and Hanszek-Brill in these alleged actions.

As set forth above, the ultimate decision as to whether these were material adverse employment actions will depend largely on the context in which they were taken, which will be developed in discovery and is not known to the Court at this early stage in these proceedings. Nevertheless, it is plausible that the reassignment of the statistics class Plaintiff planned on teaching, a campaign against other instructors using the textbook Plaintiff authored, and the

placement of a cap on the number of students enrolled in Plaintiff's remaining statistics class "would have dissuaded a reasonable worker from engaging in the protected activity." See, Delgado-O'Neil, 745 F. Supp. 2d at 901.

However, in order to sufficiently plead a retaliation claim, Plaintiff must also allege facts which support a plausible inference that his "protected conduct was a substantial or motivating factor in [D]efendants' decision to take the adverse employment action." See, Lyons, 781 F.3d at 961. The Court may not simply presume such a retaliatory intent. Defendants contend that Plaintiff's Amended Complaint "does not detail any facts linking either his history of litigation against SCSU . . . or his purported October 2013 internal complaint to any of the decisions about which he complains." (Mem. in Supp., [Docket No. 20], 7).

In support, Defendants cite to McDonald v. Overnite Exp., No. 8-cv-5069 (JNE/JSM), 2009 WL 3517976 (D. Minn. Oct. 26, 2009). (Mem. in Supp., [Docket No. 20], 7). Although McDonald similarly involved a Rule 12(b)(6) motion to dismiss claims of age and race discrimination, McDonald is materially distinguishable from the present case. There, the plaintiff brought his claims against multiple defendants and the motion to dismiss was granted as to one defendant, against whom the plaintiff had "alleged no conduct . . . to support claims of discrimination or violations of § 1981, the [Age Discrimination in Employment Act], or Title VII [of the Civil Rights Act of 1964]." Id. at *7. As the Court in McDonald put it, "[t]here is no mention of how [the moving defendant] was involved in [the plaintiff's] employment," so there could be no claim of discrimination by that defendant in the context of the plaintiff's employment. Id. In the case presently before the Court, Plaintiff has at least alleged involvement in the alleged adverse employment decisions by Defendants Gregory, Buske, and Hanzek-Brill; whether those allegations are sufficient is a separate question.

Defendants also cite to Hager, 735 F.3d at 1014-15, but Defendants' assertion that Hager "affirm[ed a] dismissal where the plaintiff failed to allege gender-related conduct or comments before adverse action and made only conclusory allegations that retaliation and discrimination motivated actions" misstates the thrust of Hager's relevant portions. (See, Mem. in Supp., [Docket No. 20], 7). The portion of Hager to which Defendants appear to refer[13] deals with claims of gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment, which, as noted previously, require the initial pleading of elements different than those required for retaliation claims, and thus is of limited relevance here. See, 735 F.3d at 1014-15.

The portion of Hager more applicable to the present case is the Eighth Circuit's examination of the plaintiff's claim of "retaliation" against her for exercising her rights under the Family Medical Leave Act ("FMLA"). See, Id. at 1016-17. Such claims have elements very similar to those in a First Amendment retaliation claim under § 1983, such as the claims in the case presently before this Court. To prove a claim of discrimination in retaliation for exercising FMLA rights, a "plaintiff must 'show that she exercised rights afforded by the [FMLA], that she suffered an adverse employment action, and that there was a causal connection between her exercise of rights and the adverse employment action.'" See, Id. at 1016. The Eighth Circuit noted:

> Hager alleges that [her employer] discriminated against her—firing her—because she exercised her FMLA rights—tried to take leave for a doctor's appointment, which was 'necessary to insure that [her] condition did not develop into a serious health condition, cataracts.' If Hager had properly alleged [the] notice [require by the FMLA], these allegations would be sufficient. However, because Hager failed to plead notice of intent to take FMLA leave, and that she was qualified for that leave, she has not sufficiently alleged that she exercised FMLA rights.

---

[13] Defendants did not provide a pinpoint citation.

(Citations omitted.) Id. at 1016-17. In Hager, the Eighth Circuit found the allegations in the operative complaint insufficient to support a plausible claim on the asserted FMLA cause of action, but for purposes of the present case, it did not find that deficiency to be in the plaintiff's allegation of causation as Defendants suggest. Id. at 1015-17.

The Court is aware that it is "not bound to accept as true a legal conclusion couched as a factual allegation." See, Twombly, 550 U.S. at 555. However, the Eighth Circuit recently addressed the appropriate pleading burden to be placed on a plaintiff who must plead causation as part of a retaliation claim. In Wilson v. Ark. Dept. of Human Servs., 850 F.3d 368, 372-73 (8th Cir. 2017), a majority of a panel of the Eighth Circuit explained:

> Under the "simplified notice pleading standard" that governs McDonnell Douglas retaliation claims, summary judgment motions—not motions to dismiss—should dispose of most unmeritorious claims. See, Swierkieweicz[ v. Sorema N.A., 534 U.S. 506, 512 (2002)] (emphasis added) ("This simplified notice pleading standard relies on liberal discovery rules and *summary judgment motions* to define disputed facts and issues and to dispose of unmeritorious claims."); id. at 512-13 (quotation omitted) ("The provisions for discovery are so flexible and the provisions for pretrial procedure and summary judgment so effective, that attempted surprise in federal practice is aborted very easily, synthetic issues detected, and the gravamen of the dispute brought frankly into the open for the inspection of the court."); Johnson v. City of Shelby, ___ U.S. ___, 135 S. Ct. 346, 347 (2014) (per curiam) (citing Swierkiewicz approvingly).

> [The majority opinion continued:]

> Wilson alleges she was a "victim of retaliation, after having complained about discrimination based on race, when she was ultimately terminated." Construed most favorably to her, and viewing the complaint as a whole, the phrase "victim of . . . retaliation, after having complained" alleges but-for causation. In terms of the factual allegations, Wilson emphasizes the six-week span between her [protected conduct] and termination. . . . On the allegations here, the six-week period between [the protected conduct] and the termination plausibly alleges a but-for causal connection.

Id. at 373. Moreover, although the majority "consider[ed] 'whether there are lawful, "obvious alternative explanation[s]" that would render [the plaintiff's] complaint implausible," it also

warned that "'[r]equiring a plaintiff to rule out every possible lawful explanation for the conduct he challenges . . . would impose the sort of probability requirement at the pleading stage which Iqbal and Twombly explicitly reject.'" (Citations omitted.) Id. Ultimately, the Wilson majority held that the district court had erred in dismissing the retaliation claim under Rule 12(b)(6). See, Id. at 371, 374.

Guided by the majority opinion in Wilson, this Court concludes that Plaintiff in the present case has pled sufficient facts to support a plausible claim that his October 2013 internal discrimination complaint, and/or his "continuing complaint[s]" about his perceived employment discrimination were "a substantial or motivating factor in the defendants' decision to take the [alleged] adverse employment action." See, Lyons, 781 F.3d at 961. Taking all factual allegations in the Amended Complaint as true, Plaintiff filed his internal discrimination complaint in October 2013, and the adverse employment actions on which he bases his First Cause of Action occurred in December 2013. This mere 2-month time span supports a plausible inference, sufficient to survive a Rule 12(b)(6) motion to dismiss, that the internal complaints were a substantial or motivating factor in the reassignment of Plaintiff's class, the campaign against other instructors using the textbook he authored, and the capping of the size of his class enrollment. See, Wilson, 850 F.3d at 373 (finding a 6-week interval between protected conduct and adverse employment action sufficient to plausibly show causation and listing cases finding the same about 2- and 5-month intervals).

While it may be that Plaintiff's retaliation claim as set forth in his First Cause of Action will not survive a subsequent Rule 56 summary judgment motion after appropriate discovery, that ultimate determination is better left for a later disposition. A Rule 12(b)(6) motion is not the appropriate vehicle to determine the substantive merits of this claim. To survive dismissal under

Rule 12(b)(6), Plaintiff need not prove that his arguments are winning ones; he only need show that success on the merits is more than a "sheer possibility." See, Iqbal, 556 U.S. at 678. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal quotations and citations omitted). At this early point of the present litigation, the Court concludes that in the First Cause of Action, Plaintiff has sufficiently alleged facts which, taken as true, and with all reasonable inferences drawn in his favor, could support a claim for "retaliation" in violation of the First Amendment against Defendant Gregory, Defendant Buske, and Defendant Hanzek-Brill.

Accordingly, this Court recommends **denying** Defendants' Motion to Dismiss to the extent that it requests dismissal of Plaintiff's First Cause of Action.

### b. Second Cause of Action

Plaintiff's Second Cause of Action is based on his allegations that (1) Defendants Buske, Hanszek-Brill, and Gregory twice denied him the use of Learning Assistants despite his being more trained in their use than other faculty members who had similarly sized classes and who were allowed to use Learning Assistants—once in December 2013 and once at an unidentified time while Plaintiff was on sabbatical in Nigeria; (2) unspecified Defendants "made false, derogatory, and painful statements about [Plaintiff's] pedagogy," published those statements to the entire department, and stored them in a shared computer drive; and (3) when Plaintiff complained to Defendant Bartges about the comments, she "did nothing to address the situation." (Compl., [Docket No. 1], 5-7).

Plaintiff specifically identifies his Second Cause of Action as being "for race discrimination." (Mem. in Opp., [Docket No. 32], 8). Plaintiff also alleges within the Second

Cause of Action, however, that "[b]y reason of the foregoing, [D]efendants have retaliated against [P]laintiff . . . ." (Amend. Compl., [Docket No. 15], 7). Because the Amended Complaint was drafted and filed *pro se*, the Court will construe the Second Cause of Action to bring retaliation <u>and</u> discrimination claims, and it examines the pleading sufficiency of both.

In order to adequately plead an equal protection claim for discrimination and survive the present Rule 12(b)(6) motion, the Amended Complaint must sufficiently allege that Defendants treated Plaintiff differently than similarly situated persons of a different group. <u>See</u>, <u>Johnson v. City of Minneapolis</u>, 152 F.3d 859, 862 (8th Cir. 1998).

With regards to Defendants Buske, Hanszek-Brill, and Gregory's December 2013, denial of Plaintiff's request to use Learning Assistants, Plaintiff has alleged that Defendants Buske, Hanszek-Brill, and Gregory "approved [the] same for the White faculty who applied," despite Plaintiff's prior successful use of Learning Assistants and the extensive training he had received in the use of Learning Assistants. (<u>Id.</u> at 5-6). These allegations clearly allege personal involvement by Defendants Buske, Hanszek-Brill, and Gregory in treating Plaintiff differently than similarly situated faculty members who were white. Although this discrimination claim may not survive a subsequent Rule 56 summary judgment motion after appropriate discovery, that ultimate determination is better left for a later disposition. As previously observed, a Rule 12(b)(6) motion is not the appropriate vehicle to determine the substantive merits of this claim. Accordingly, the Court concludes that in the Second Cause of Action, Plaintiff has sufficiently alleged facts which, when taken as true and with all reasonable inferences drawn in his favor, could support a claim for racial discrimination in violation of the Equal Protection Clause against Defendant Gregory, Defendant Buske, and Defendant Hanszek-Brill for the December 2013, decision to deny Plaintiff the use of Learning Assistants.

However, Plaintiff's allegations regarding a similar alleged denial of Learning Assistants which took place while Plaintiff was on sabbatical in Nigeria do not allege the same racially disparate treatment. Rather, Plaintiff alleges only that "other faculty with similar number of students were approved for the use of" Learning Assistants. (Amend. Compl., [Docket No. 15], 6).

Because Plaintiff makes no allegation that he was treated differently than similarly situated faculty because of his race, this denial of the use of Learning Assistants while Plaintiff was on sabbatical in Nigeria cannot support a plausible claim for unlawful racial discrimination.

Nor does this second alleged denial of the use of Learning Assistants sufficiently support a plausible claim for unlawful retaliation. "'Not everything that makes an employee unhappy is an actionable adverse employment action.'" Henthorn, 359 F.3d at 1028. Rather, adverse employment actions must be "material," meaning that "such an action would have dissuaded a reasonable worker from engaging in the protected activity." See, Delgado-O'Neil, 745 F. Supp. 2d at 901; Henthorn, 359 F.3d at 1028 ("Each action claimed to be retaliatory must be sufficiently adverse to have created a material change in the employment, 'such as a change in salary, benefits, or responsibilities.'"). Although Plaintiff conclusorily asserts that Learning Assistants "are critical to the success of many efforts to transform teaching and learning in science, technology, engineering and mathematics courses at SCSU," (see, Amend. Compl., [Docket No. 15], 6), Plaintiff fails to make sufficient factual allegations that the lack of Learning Assistants materially changed the benefits, terms, or conditions of his employment.

In addition, Plaintiff does not specify which Defendants were personally involved in and allegedly responsible for this decision to deny him the use of Learning Assistants while he was on sabbatical in Nigeria; this failure also proves fatal to this portion of his Second Cause of

Action. See, Jackson, 747 F.3d at 543 ("To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights.").

Turning to Plaintiff's allegation that some unnamed Defendants "made false, derogatory, and painful statements about [Plaintiff's] pedagogy" and made statements suggesting that Plaintiff "submitted an incompetent application for" Learning Assistants, Plaintiff has again failed to sufficiently allege facts that show an adverse employment action such as is required to plead a plausible claim for retaliation. (See, Amend. Compl., [Docket No. 15], 6). Although Plaintiff alleges that the statements were painful, hurtful, and published to the entire department, Plaintiff does not allege that the statements had any material impact on the benefits, terms, or conditions of his employment. Moreover, Plaintiff again fails to identify which, if any, of the individually named Defendants participated, if at all, in the creation and/or publication of the statements.

Finally, Plaintiff asserts that he "complained about this hurtful situation to [Defendant Bartges] who did nothing to address the situation." (Id. at 6). This single statement, the only mention of Defendant Bartges in Plaintiff's Second Cause of Action, is insufficient to show Defendant Bartges' personal involvement in the violation of any of Plaintiff's constitutional rights, either by unlawful retaliation or by unlawful discrimination.

Even liberally construing the Amended Complaint as a whole, taking all facts pled therein as true, and drawing all reasonable inferences in Plaintiff's favor, this Court must conclude that Plaintiff has failed to sufficiently plead facts that establish the majority of the constitutional violations upon which Plaintiff bases the § 1983 claims he asserts in his Second Cause of Action, as he must in order to survive the present Rule 12(b)(6) Motion to Dismiss. The only claim which Plaintiff has sufficiently pled is the discrimination claim against Defendant

Buske, Defendant Hanszek-Brill, and Defendant Gregory based upon their December 9, 2013, denial of Plaintiff's request to use Learning Assistants in teaching STAT 193.

Accordingly, this Court recommends that Defendants' Motion to Dismiss, [Docket No. 18], to the extent that it requests dismissal of the portion of Plaintiff's Second Cause of Action based upon Defendant Buske, Defendant Hanszek-Brill, and Defendant Gregory's December 2013, denial of Plaintiff's request for Learning Assistants be **DENIED**. The Court recommends **granting** Defendants' Motion to Dismiss, [Docket No. 18], to the extent that it requests dismissal of all other claims asserted in Plaintiff's Second Cause of Action.

### c. Third Cause of Action

Plaintiff's Third Cause of Action is based upon Defendants Buske and Gregory's alleged denial of Plaintiff's request to participate in the S2S program by mentoring a high school teacher and the reassignment of his S2S classes to a white SCSU faculty member. (Amend. Compl., [Docket No. 15], 7). Plaintiff alleges that all of the S2S classes were not immediately restored to him when he returned from his 2014/2015 sabbatical as had been agreed upon, and one of the classes that was restored to him was cancelled only one semester later. (Id. at 7-8). Plaintiff points out that the white faculty member who took over his classes while he was on sabbatical nevertheless still had two S2S classes after Plaintiff's return. (Id. at 9). Plaintiff also complains that Defendant Bartges delayed responding to his resulting complaint and she ultimately informed Plaintiff that his "complaint did not qualify to be treated as an employment discrimination complaint." (Id.).[14] Finally, Plaintiff asserts that Defendant Zhao "had foreknowledge of the aforesaid plan." (Id. at 9).

---

[14] Plaintiff also asserts that he wrote a letter of complaint to the Provost of SCSU and that she failed to respond. (Amend. Compl., [Docket No. 15], 9). To the extent that Plaintiff intends this to be a claim against the Provost, such a claim should be dismissed without prejudice since the Provost is not a named defendant in this case. See, Waldorf v. Dayton, No. 17-cv-107 (JRT/LIB), 2017 WL 2729565, *10 n.7 (D. Minn. June 6, 2017) (noting that dismissal

Once again, the legal basis for Plaintiff's claims within his Third Cause of Action is less than clear. However, because part of Plaintiff's factual assertions therein is that "the aforesaid situation" caused him to file an employment discrimination complaint with Defendant Bartges, the Court first construes Plaintiff's Third Cause of Action as bringing a claim of unlawful employment discrimination. However, Plaintiff's Third Cause of Action contains no factual allegations to support that because of his race, he was treated differently than a similarly situated group.

Plaintiff contends that he was not allowed to fully continue in the S2S program either while on or upon his return from sabbatical, despite SCSU's "history of allowing several faculty on sabbatical leave to continue to mentor teachers who were teaching S2S classes under them." (Amend. Compl., [Docket No. 15], 7). Plaintiff makes no mention of the racial makeup of faculty who were allowed to continue in the S2S program while on sabbatical. While Plaintiff makes note that the faculty member to whom Plaintiff's S2S classes were reassigned during his 2014/2015 sabbatical was white, as were the S2S teachers who chose to work with SCSU faculty other than Plaintiff after he returned from his sabbatical, (Id. at 8-9), he does not specifically identify anyone who was not black nor of a national origin out of Nigeria and similarly situated to Plaintiff but was permitted to fully participate in S2S while on sabbatical and was fully restored to all S2S classes upon return from sabbatical. (Id. at 7-9). Because Plaintiff has failed to specifically allege that members of a similarly situated group were treated differently than Plaintiff based upon his race, he cannot sustain a claim of unlawful racial discrimination based upon the facts alleged in his Third Cause of Action.

---

without prejudice was warranted where claim was pled against entities which were not defendants in the case), report and recommendation adopted by 2017 WL 2773942 (June 26, 2017); see, also, Kislyak v. Nebraska, No. 12CV3042, 2012 WL 1392946, *1 (D. Neb. April 18, 2012) (dismissing without prejudice a complaint which alleged only actions taken by a non-defendant individual).

Even liberally construing the Amended Complaint as a whole, taking all facts pled therein as true, and drawing all reasonable inferences in Plaintiff's favor, this Court must conclude that Plaintiff has failed to sufficiently plead facts that establish a plausible claim of racial discrimination in violation of the First Amendment.

However, the Court must also separately analyze whether Plaintiff's Third Cause of Action is sufficient to support a plausible claim for retaliation.

Plaintiff has sufficiently pled the personal involvement of Defendants Buske and Gregory, explicitly alleging that they denied him the opportunity to participate in the S2S program while on sabbatical. (Amend. Compl., [Docket No. 15], 7). Plaintiff has also sufficiently alleged an adverse employment action; he specifically asserts that he could have earned additional income during his sabbatical had he been allowed to participate in the S2S program at that time. (Id.). Similarly, the restoration of less than all of his S2S classes upon his return from sabbatical also adversely affected his employment because it also deprived Plaintiff of income. (Id. at 8). Moreover, because the events underlying Plaintiff's Third Cause of Action occurred in early 2014 and Plaintiff had filed an internal complaint of discrimination in the fall of 2013, it is reasonable to make a plausible inference, solely for the purposes of this Rule 12(b)(6) Motion to Dismiss, that the motivation behind the decisions with regard to the S2S program was retaliatory.

Therefore, liberally construing the *pro se* Amended Complaint as a whole, taking all facts pled therein as true, and drawing all reasonable inferences in Plaintiff's favor, this Court concludes that Plaintiff has sufficiently pled facts that establish a plausible claim of retaliation by Defendant Buske and Defendant Gregory in violation of the First Amendment arising out of their denial of Plaintiff's request to participate fully in the S2S program as alleged in his Third Cause of Action.

Plaintiff asserts that Defendant Bartges delayed her response to a complaint Plaintiff filed about the actions of Defendants Buske and Gregory alleged in Plaintiff's Third Cause of Action, and Defendant Bartges "finally respond[ed] to say that the complaint did not constitute unlawful employment discrimination." (Amend. Compl., [Docket No. 15], 9). This single statement, the only mention of Defendant Bartges in Plaintiff's Third Cause of Action, like a similarly terse reference to Defendant Bartges in the Second Cause of Action, supra, is insufficient to show Defendant Bartges' personal involvement in the alleged violation of Plaintiff's constitutional rights, especially in light of this Court's conclusion that Plaintiff has not sufficiently pled a claim for unlawful racial discrimination. Thus, to the extent that Plaintiff seeks in his Third Cause of Action to bring a claim against Defendant Bartges, such a claim should be **dismissed.**

Similarly, although Plaintiff asserts that Defendant Zhao was involved in the reassignment of Plaintiff's S2S classes while he was on 2014/2015 sabbatical, that she supported a resolution that allowed S2S high school teachers to choose which SCSU mentoring professor to work with, and that she knew that the teachers wanted to be allowed that choice, (Id. at 8-9), he does not allege that Defendant Zhao was personally involved in the decisions to deny Plaintiff's request to participate in the S2S program while on sabbatical. (See, Id.at 7-9). Since Plaintiff has not alleged Defendant Zhao's personal involvement in any of the decisions to deny his participation in the S2S program, to the extent that Plaintiff seeks in his Third Cause of Action to bring claims against Defendant Zhao, such claims should be **dismissed.**

Accordingly, this Court recommends **denying** Defendants' Motion to Dismiss, [Docket No. 18], to the extent that it requests dismissal of the portion of Plaintiff's Third Cause of Action that purports to bring a retaliation claim against Defendant Buske and Defendant Gregory based upon their actions with regards to Plaintiff's participation in the S2S program while he was on

2014/2015 sabbatical and Defendant Gregory's decision not to restore the classes to Plaintiff upon his return. The Court recommends **granting** Defendants' Motion to Dismiss, [Docket No. 18], as to all other claims attempted to be pled in Plaintiff's Third Cause of Action.

### d. Fourth Cause of Action

Plaintiff's Fourth Cause of Action is based upon the reclassification by Defendants Gregory and Zhao of a portion of Plaintiff's classes for the Spring 2016 Semester as on-load instead of online, while no other faculty members had their courses reclassified in such a way. (Compl., [Docket No. 1], 8-9). Although it is difficult to discern what legal theory Plaintiff argues in this cause of action, assuming that the facts alleged in the *pro se* Amended Complaint are true and construing those facts in the light most favorable to Plaintiff, it is reasonable to infer that this is a claim of retaliation for Plaintiff's prior internal complaints. This inference is consistent with Plaintiff's clarifying assertions at the Motions Hearing where he asserted that all of the claims he is bringing are claims of either unlawful retaliation or unlawful discrimination. (July 24, 2017, Motion Hearing, Digital Record, 3:15-16).

Plaintiff has specifically identified Defendants Gregory and Zhao as having personal involvement in the decision to reclassify 30 of the students enrolled in STAT 193 as on-load; he alleges that both Defendant Gregory and Zhao "decided" to implement the reclassification, and that Defendant Gregory rejected his request to teach an additional on-campus course rather than have the students reclassified.

Moreover, Plaintiff has sufficiently pled an adverse employment action in his Fourth Cause of Action by alleging that the reclassification of STAT 193 students deprived him of the extra pay he would have received if all the students had remained classified as on-load, for which he would have been paid per student. See, Henthorn, 359 F.3d at 1028 ("Each action claimed to

be retaliatory must be sufficiently adverse to have created a material change in the employment, 'such as a change in salary, benefits, or responsibilities.'" (Emphasis added.)).

Finally, with regard to the causation element, Plaintiff has alleged in his Amended Complaint that in addition to the prior lawsuit he pursued all the way to the Eighth Circuit in 2012, he filed a formal discrimination complaint in October 2013; he filed a complaint with Defendant Bartges on March 21, 2104, and he wrote a formal letter of complaint to the Provost of SCSU in December 2015, regarding Defendant Gregory's treatment of him. (Amend. Compl., [Docket No. 15], 5, 9). Because the events which underlie Plaintiff's Fourth Cause of Action occurred with respect to assignments to be made for the Spring 2016 semester, the Court concludes that taking the allegations in the Amended Complaint as a whole, taking them as true, and construing them in the light most favorable to Plaintiff, it is reasonable to infer that the reclassification of STAT 193 students could have been motivated by retaliatory intent. See, Wilson, 850 F.3d at 373.

As previously noted, supra, while it may be that this claim will not survive a subsequent Rule 56 summary judgment motion after appropriate discovery, that ultimate determination is better left for a later disposition. A Rule 12(b)(6) motion is not the appropriate vehicle to determine the substantive merits of this claim. At this early point of the present litigation, the Court concludes that in the Fourth Cause of Action, Plaintiff has sufficiently alleged facts which, taken as true and with all reasonable inferences drawn in his favor, could support a plausible claim for retaliation in violation of the First Amendment against Defendant Gregory and Defendant Zhao.

Accordingly, this Court recommends **denying** Defendants' Motion to Dismiss, [Docket No. 18] to the extent that it requests dismissal of Plaintiff's Fourth Cause of Action against Defendants Gregory and Zhao.[15]

### e. Fifth Cause of Action

Plaintiff bases his Fifth Cause of Action on the creation of his teaching schedule for the Spring 2016 semester by Defendants Gregory and Zhao without consulting Plaintiff, which allegedly resulted in a teaching schedule without sufficient breaks between classes. (Amend. Compl., [Docket No. 15], 11-12). Plaintiff contends that it was not normal practice to schedule so many classes on one day and that his health suffered from the rigorous teaching schedule; yet Defendant Gregory denied Plaintiff's request to switch classes with another teacher despite such switching being very frequent. (Id. at 12).

Plaintiff has sufficiently alleged personal involvement in these actions by Defendant Gregory and Defendant Zhao by asserting that they were both directly involved in creating his Spring 2016 teaching schedule. As far as alleging that the actions were motivated by a retaliatory intent, Plaintiff specifically alleges that Defendant Gregory "was actuated by a retaliatory motive . . . ." (Id.). Plaintiff does not include Defendant Zhao in this assertion of improper motive. (Id.). However, it is clear that Plaintiff intended his Fifth Cause of Action to be based upon the creation of his teaching schedule for the Spring 2016 semester, and he alleges that both Defendant Gregory and Defendant Zhao were involved in that creation. Because Plaintiff was *pro se* at the time he drafted his Amended Complaint, the Court construes the Amended Complaint liberally and draws all reasonable inferences in Plaintiff's favor. See, Sneh, 2012 WL

---

[15] Plaintiff also asserts that he wrote a letter of complaint to the Provost of SCSU and that she failed to respond. (Compl., [Docket No. 1], 8). To the extent that Plaintiff intends this to be a claim against the Provost, such a claim is recommended dismissed without prejudice since the Provost is not a named defendant in this case. See, Waldorf, 2017 WL 2729565, at *10 n.7; see, also, Kislyak 2012 WL 1392946, at *1 (D. Neb. April 18, 2012) (dismissing without prejudice a complaint which alleged only actions taken by a non-defendant individual).

5519690, at *5. It is reasonable to infer that Plaintiff did not intend to restrict his Fifth Cause of Action only to bring a claim against Defendant Gregory.

As to the sufficiency of this Cause of Action when construed as a retaliation claim, Plaintiff has alleged a change to his teaching schedule which left him with an uncommonly taxing schedule that caused his health to suffer. Taking these allegations as true and viewing them in the light most favorable to Plaintiff, he has pled facts sufficient to support a plausible finding that he suffered an adverse employment action when his teaching schedule was altered to make it more taxing. See, Jung v. City of Minneapolis, 187 F. Supp. 3d 1034, 1046 (D. Minn. 2016) (finding there was evidence to support that plaintiff suffered an adverse employment action when "her work schedule was changed in a way that required her to work (at least on occasion) 24-hour shifts and engage in physically demanding activities").

Moreover, as set forth above with regards to Plaintiff's Fourth Cause of Action, the timing of the creation of Plaintiff's Spring 2016 semester teaching schedule, when compared to the events for which Plaintiff asserts he was retaliated against, sufficiently supports, at this early stage in the litigation, a reasonable inference that Plaintiff's Spring 2016 semester teaching schedule was motivated by retaliatory intent.

Accordingly, this Court recommends **denying** Defendants' Motion to Dismiss, [Docket No. 18], to the extent that it seeks to dismiss claims of unlawful retaliation against Defendants Gregory and Zhao contained within Plaintiff's Fifth Cause of Action.

One further point regarding Plaintiff's Fifth Cause of Action requires comment. He also generically alleges that his Spring 2016 semester teaching schedule was created with "negative racial animus," leading the Court to believe that Plaintiff may have also intended to bring a racial discrimination claim in his Fifth Cause of Action as well. (Amend. Compl., [Docket No. 15],

12). However, in order to adequately plead an equal protection claim for racial discrimination and survive a Rule 12(b)(6) motion, Plaintiff needed to specifically plead that Defendants treated him differently than similarly situated persons. See, Johnson, 152 F.3d at 862. Within his Fifth Cause of Action, Plaintiff makes no specific factual allegations regarding any faculty members who were similarly situated to Plaintiff but were treated differently on the basis of race. The Court is not bound to accept mere legal conclusory statements couched as factual allegations. See, Twombly, 550 U.S. at 555.

Therefore, to the extent that Plaintiff's Fifth Cause of Action might also be viewed to be based upon a claim of the violation of his rights under the Equal Protection Clause due to racial discrimination, the Court recommends that Defendants' Motion to Dismiss, [Docket No. 18], be **granted**.

### f. Sixth Cause of Action

Plaintiff bases his Sixth Cause of Action on the teaching assignments made during the Summer of 2016. (Amend. Compl., [Docket No. 15], 12-13). Plaintiff asserts that he, Defendant Buske, and Defendant Hanszek-Brill regularly taught online summer courses. (Id.at 13). In the Summer of 2016, however, Defendant Gregory denied funding for online classes and arranged for Defendants Buske and Hanszek-Brill—but not Plaintiff—to teach on-campus courses during the summer of 2016 instead. (Id.). Plaintiff alleges that he, Defendant Buske, and Defendant Hanszek-Brill were similarly situated as SCSU faculty who regularly taught summer classes online. However, Plaintiff, who is black, allegedly was not given the opportunity to teach on-campus courses during the Summer of 2016; by this purported denial of opportunity, Plaintiff has alleged that he was treated differently than Defendants Buske and Hanszek-Brill, who are white and who were given assigned on-campus summer courses to teach during the Summer of

2016.[16] Construing the *pro se* Amended Complaint liberally, Plaintiff appears to be asserting a racial discrimination claim, and he has sufficiently pled Defendant Gregory's personal involvement in the actions underlying this claim.

Taking the allegations in the Amended Complaint and construing them liberally, assuming the facts alleged within as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged facts in his Sixth Cause of Action which could support a plausible claim against Defendant Gregory for racial discrimination in violation of Plaintiff's Equal Protection rights.

Accordingly, this Court recommends **denying** Defendants' Motion to Dismiss, [Docket No. 18], to the extent that it requests dismissal of Plaintiff's Sixth Cause of Action.

### g.  Seventh Cause of Action[17]

Plaintiff bases his Seventh Cause of Action on events which occurred with regard to classes during the Fall 2016 semester. (Amend. Compl., [Docket No. 15], 13-15). The Department of Mathematics and Statistics resolved that MATH 112, MATH 193, and STAT 193 would be offered online during the Fall 2016 semester. (Id. at 13). Defendant Gregory decided to cap enrollment in MATH 112 and MATH 193 (taught by Defendants Buske and Hanszek-Brill) at 40 students, and to cap enrollment in STAT 193 (taught by Plaintiff) at 60 students. (Id. at 14). Plaintiff was excluded from an April 4, 2016, departmental meeting about the caps during which Defendants Gregory, Buske, Zhao, and Hanszek-Brill decided to cancel online STAT 193 but

---

[16] Although Plaintiff does not explicitly identify Defendants Hanszek-Brill and Buske as white, in his Seventh Cause of Action he refers to classes taught by Defendants Hanszek-Brill and Buske as "classes of the White faculty." (See, Amend. Compl., [Docket No. 15], 14).

[17] Although Plaintiff identifies his Seventh Cause of Action as a "hostile work environment claim," he points out the differences between his treatment and the treatment of the "white faculty." (Mem. in Opp., [Docket No. 32], 9). However, based upon the facts pled in relation to the Seventh Cause of Action, the Court could also construe it as a retaliation claim. (See, Amend. Compl., [Docket No. 15], 13-14 (referring to actions being taken as "a punitive measure against" Plaintiff to "create a hostile work environment"). Therefore, the Court will analyze the sufficiency of Plaintiff's pleading under both legal theories.

retain online MATH 112 and MATH 193. (Id.). When Plaintiff later asked for an explanation, Defendant Zhao did not clarify for Plaintiff why his Fall 2016 online STAT 193 class was cancelled. (Id. at 15).

Plaintiff has sufficiently alleged personal involvement in these events to bring claims against Defendants Gregory, Buske, Zhao, and Hanszek-Brill. He has alleged that they were all directly involved in the April 2016, decision to cancel his Fall 2016 online STAT 193.

Plaintiff has further sufficiently alleged that the cancellation of his Fall 2016 STAT 193 class, an online course which Plaintiff teaches, denied Plaintiff the income from teaching that class and the royalties Plaintiff would have earned from the use of his textbook in teaching STAT 193. (Amend. Compl., [Docket No. 15], 14). Clearly, loss of income is an adverse employment action. See, Henthorn, 359 F.3d at 1028 ("Each action claimed to be retaliatory must be sufficiently adverse to have created a material change in the employment, 'such as a change in salary, benefits, or responsibilities.'" (Emphasis added.)).

Finally, as with Plaintiff's other retaliation claims, the temporal relation of the actions of Defendants in April 2016, upon which Plaintiff bases his Seventh Cause of Action, are not unreasonably remote from several prior examples of Plaintiff's alleged protected activities. In addition to the prior lawsuit Plaintiff pursued all the way to the Eighth Circuit in July 2012, he filed a formal discrimination complaint in October 2013, he filed a complaint with Defendant Bartges in March 2014, and he sent a formal letter of complaint to SCSU's Provost in December 2015. (Amend. Compl., [Docket No. 15], 5, 9). Specifically, Plaintiff alleges, "the cancellation of STAT 193 was carried out as a punitive measure against" Plaintiff in retaliation for those protected activities. (See, Id. at 15). Because the events upon which Plaintiff bases his Seventh Cause of Action occurred in April 2016, the Court concludes that considering the allegations in

the Amended Complaint as a whole, taking them as true and construing them in the light most favorable to Plaintiff, it is reasonable to infer that the cancellation of his Fall 2016 online STAT 193 class could have been motivated by retaliatory intent.

Although this Court is mindful that the actions underlying Plaintiff's Causes of Action are getting temporally further from his prior 2012 lawsuit and the late 2015 internal complaints he identifies in his Amended Complaint, the Court is equally mindful that even when an adverse employment reaction occurs some time after the protected activity, that may still not bar a retaliation claim if the adverse employment action was the "result of an *ongoing* pattern of retaliatory behavior." See, Warren v. Prejean, 301 F.3d 893, *900 (8th Cir. 2002) (emphasis in original). Without addressing the likelihood of ultimate success of such an ongoing pattern argument in the present case, the Court notes here only that for Rule 12(b)(6) purposes the Plaintiff has alleged an ongoing pattern of retaliatory behavior.

Accordingly, construing the *pro se* Amended Complaint liberally, taking all the facts alleged within as true and drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has sufficiently alleged facts in his Seventh Cause of Action which could support a plausible claim for retaliation regarding the April 2016, cancellation of his Fall 2016 online STAT 193 class in violation of the First Amendment against Defendant Gregory, Defendant Zhao, Defendant Hanszek-Brill, and Defendant Buske.

Accordingly, this Court recommends **denying** Defendants' Motion to Dismiss, [Docket No. 18], to the extent that it requests dismissal of Plaintiff's Seventh Cause of Action.

### h. Eighth Cause of Action

Plaintiff's Eighth Cause of Action is based on events which occurred at a departmental meeting he attended on April 11, 2016. (Amend. Compl., [Docket No. 15], 15-17). Plaintiff

wished to discover why STAT 193 had been cancelled. (Id. at 16). Plaintiff alleges that various individuals (whom he does not identify) in attendance at the meeting, specifically including Defendant Buske, were hostile and menacing toward him. (Id. at 16-17). Plaintiff further alleges that some of those unnamed individuals later filed an anonymous internal complaint against Plaintiff. (Id. at 17).

The facts alleged within this Eighth Cause of Action are not sufficient to support a plausible claim of either retaliation or discrimination. Plaintiff alleges no adverse employment actions were taken against him during the April 11, 2016, departmental meeting. Nor does Plaintiff allege that as a result of this departmental meeting he was treated in a way different than others similarly situated to Plaintiff. Plaintiff does state that by his conduct at the departmental meeting, Defendant Buske "gave [himself] away as the real author[] of [Plaintiff's] unfair assignment." (Id. at 17). Although the facts alleged in the Eighth Cause of Action, if confirmed in discovery, may provide context and possible support for other claims presented in the Amended Complaint, they are not sufficient to plead a plausible, independent claim of either retaliation or discrimination.

Even liberally construing the Amended Complaint as a whole, taking all facts pled therein as true and drawing all reasonable inferences in Plaintiff's favor, this Court concludes that Plaintiff has failed to sufficiently plead facts that establish any constitutional violations upon which Plaintiff bases his § 1983 claims, as he must in order to survive a Rule 12(b)(6) motion, with regards to his Eighth Cause of Action. "[A]lleged rude and unprofessional conduct does not state a claim of constitutional dimension." Jordan v. Karas Health Care, No. 5:16-cv-05161, 2016 WL 5539639, * (W.D. Ark. Sept. 28, 2016) (collecting cases from the Eighth Circuit supporting this statement).

Accordingly, this Court recommends **granting** Defendants' Motion to Dismiss, [Docket No. 18], to the extent that it seeks dismissal of Plaintiff's Eighth Cause of Action.

### i.   Ninth Cause of Action

As clarified by Plaintiff's counsel at the July 24, 2017, Motion Hearing, Plaintiff's Ninth Cause of Action alleges that the denial of Plaintiff's November 2013, request that his salary again be reviewed by SCSU administration was motivated by retaliatory intent spurred by Plaintiff's prior 2012 litigation. (See, July 24, 2017, Motion Hearing, Digital Record, 3:12-14). In the relevant portion of his *pro se* Amended Complaint, Plaintiff incorporates by reference the facts already alleged in the Amended Complaint and adds the following factual assertions:

> 126.   In or about November 2013, ONYIAH requested a review of his salary by SCSU, to bring [the] same in line with professors of his experience and stature within SCSU.
> 127.   On or about December 10, 2013, both the Provost and Academic Vice President of SCSU and President of SCSU, informed ONYIAH that no adjustment in his salary was warranted.
> 128.   Specifically, in the response, defendants invoked the prior litigation by ONYIAH thus: "litigation was concluded without a finding that SCSU needed to adjust [your] salary. Had you succeeded in that litigation adjustment would have been made."

(Amend. Compl., [Docket No. 15], 17-18).

However, neither the Provost, the Academic Vice President of SCSU, nor the President of SCSU—who are the only individuals specifically identified in the Ninth Cause of Action as being involved in that denial—is named as Defendants in the action presently before the Court. And the facts alleged, as related above, do not include any actions by any of the named Defendants. Thus, this claim is based solely on the actions of non-defendants, and it should be dismissed without prejudice. See, Waldorf v. Dayton, No. 17-cv-107 (JRT/LIB), 2017 WL 2729565, *10 n.7 (D. Minn. June 6, 2017) (noting that dismissal without prejudice was warranted where claim was pled against entities which were not defendants in the case), report

and recommendation adopted by 2017 WL 2773942 (June 26, 2017); see, also, Kislyak v. Nebraska, No. 12CV3042, 2012 WL 1392946, *1 (D. Neb. April 18, 2012) (dismissing without prejudice a complaint which alleged only actions taken by a non-defendant individual). Any conclusion that the actions of the Provost, the Academic Vice President of SCSU, or the President of SCSU were motivated by Defendants' retaliatory intent would be mere speculation. See, Fowler v. Crawford, No. 7-4197-CV-C-SOW, 2009 WL 2982922, *3 (W.D. Mo. Sept. 14, 2009) (finding in the context of a summary judgment motion that an "allegation that it can be inferred from the circumstances that defendants directed the nondefendants" to take retaliatory action against the plaintiff "is merely speculative and conclusory, and will not support a retaliation claim"). In order to survive a Rule 12(b)(6) motion to dismiss, a complaint "'must contain facts with enough specificity "to raise a right to relief above the speculative level."'" Couzens v. Donohue, 854 F.3d 508, 515 (2017) (quoting Twombly, 550 U.S. at 555). Actions taken by non-defendants do not constitute specific factual allegations sufficient to support a plausible claim against named Defendants.[18]

Even reading the Amended Complaint as a whole, construing it liberally, taking all factual allegations therein as true, considering them in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to make any sufficient factual allegations within his Ninth Cause of Action to support a plausible claim against any of the named Defendants in the case now before the Court.

---

[18] Moreover, even if this Court were to disregard Plaintiff's counsel's statements at the July 24, 2017, Motion Hearing, which dismissed all claims against Defendant St. Cloud State University and Board of Trustees and Defendant Minnesota State Colleges and Universities, (see, July 24, 2017, Motion Hearing, Digital Record, 2:56-58), this would not save Plaintiff's Ninth Cause of Action. Plaintiff is prohibited by Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691-94 (1978), from proceeding with any 42 U.S.C. § 1983 claims against SCSU and the Minnesota State Colleges and Universities which seek to impose liability on a respondeat superior theory. See, Finlay v. Bd. of Trs. of Univ. of Ark., 81 Fed. Appx. 614, *1 (8th Cir. 2003).

Therefore, the Court recommends that Plaintiff's Ninth Cause of Action **be dismissed without prejudice** for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

### 5. Qualified Immunity

Defendants also contend that all of the individually named Defendants are entitled to qualified immunity. (Mem. in Supp., [Docket No. 20], 12-13).

> "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"

Young v. Mercer County Commission, 849 F.3d 728, 734 (8th Cir. 2017). "Under the doctrine of qualified immunity, a court must dismiss a complaint against a government official in his individual capacity that fails to state a claim for violation of 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hager, 735 F.3d at 1009. However, "[i]f a plaintiff can show relevant case law in the jurisdiction at the time of the incident that should have put the government employee on notice, qualified immunity is improper." Saylor v. Nebraska, 812 F.3d 637, 643 (8th Cir. 2016).

Defendants' entire argument for qualified immunity now before this Court rests upon the contention that "Plaintiff has not alleged that any of the individually-named [*sic*] Defendants acted in a way that violated a clearly established right. As such, dismissal of Plaintiff's claims against the individually-named [*sic*] defendants is appropriate." (Mem. in Supp., [Docket No. 20], 13). However, it is clearly established "'that a government employer cannot take adverse employment actions against its employees for exercising their First Amendment rights . . . .'"

See, Williams v. Tucker, 857 F.3d 765, 770-71 (8th Cir. 2017) (applying in the context of an employee participating in electoral activities); see, also, Delgado-O'Neil v. City of Minneapolis, No. 8-cv-4924 (MJD/JJK), 2010 WL 330322, *6 (D. Minn. Jan. 20, 2010) (stating that activity protected by the First Amendment includes "filing lawsuits"). Moreover, the constitutional right of access to the courts without reprisal from one's state employer was clearly established long before the events at issue in the case presently before the Court. See, Mayer v. Walvatne, No. 7-cv-1958 (JRT/RLE), 2008 WL 4527774, * 11 (D. Minn. Sept. 28, 2008) ("The cases from this Circuit, as well as from others, make clear that state officials may not take retaliatory action against an individual designed either to punish him for having exercised his constitutional right to seek judicial relief or to intimidate or chill his exercise of that right in the future.").

The right to be free from racial discrimination in an employment context has also long been clearly established. In Austin v. Long, the United States Court of Appeals for the Eighth Circuit reviewed the denial of a motion for summary judgment based on qualified immunity by a government employer in a case in which the plaintiff employee alleged termination because of his race. 779 F.3d 522, 523 (8th Cir. 2015). In affirming the United States District Court for the Eastern District of Arkansas, the Eighth Circuit stated:

> [The employer] also argues that [the plaintiff] failed to allege the violation of a clearly established constitutional right. We have observed, however, that the constitutional right to be free from "invidious discrimination is so well established and so essential to the preservation of our constitutional order that all public officials must be charged with knowledge of it. Goodwin v. Circuit Court of St. Louis County, 729 F.2d 541, 546 (8th Cir. 1984).

Id. at 525.

Thus, looking no further than the face of the Amended Complaint and accepting as true all factual allegations therein, as appropriate in the context of the present Rule 12(b)(6) Motion to Dismiss, the Court is satisfied that reasonable state employees in the position of the remaining

individually named Defendants would and should recognize that retaliation through adverse employment actions and/or discrimination against an employee due to his exercise of protected activities or on account of his race are violations of that employee's constitutional rights. Thus, Defendants are not entitled to qualified immunity here. <u>See</u>, <u>Mathers v. Wright</u>, 636 F.34d 396, 402 (8th Cir. 2011) (limiting its analysis and holding similarly in the same procedural context).

Accordingly, the Court recommends that the Motion to Dismiss, to the extent that it rests on qualified immunity, and as it relates to the remaining Defendants named in the surviving claims, be **denied**.

## IV.     CONCLUSION

A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  Based upon Plaintiff's counsel's representations on the record at the July 24, 2017, Motion Hearing, all of Plaintiff's claims under the Minnesota Human Rights Act be **DISMISSED without prejudice**.

2.  Based upon Plaintiff's counsel's representations on the record at the July 24, 2017, Motion Hearing, all of Plaintiff's claims against Defendant St. Cloud State University and Board of Trustees and Defendant Minnesota State Colleges and Universities be **DISMISSED with prejudice**.

3.  Defendants' Motion to Dismiss, [Docket No. 18], be **GRANTED IN PART AND DENIED IN PART.**

    i.  Plaintiff's claims under 42 U.S.C. § 1981 be **DISMISSED with prejudice**;

ii. Plaintiff's claims for monetary and punitive damages against all named individual Defendants in their official capacities be **DISMISSED with prejudice;**

iii. Defendants' Motion to Dismiss Plaintiff's First Cause of Action of First Amendment retaliation against Defendants Gregory, Buske, and Hanszek-Brill be **DENIED;**

iv. Defendants' Motion to Dismiss Plaintiff's Second Cause of Action be **DENIED** as to his claim that Defendants Buke, Hanszek-Brill, and Gregory discriminated against him on the basis of his race or national origin in December 2013, when they denied his request to use Learning Assistants; but, in all other respects, Defendants' Motion to Dismiss be **GRANTED**, as to Plaintiff's Second Cause of Action which should therefore, be **DISMISSED without prejudice;**

v. Defendants' Motion to Dismiss Plaintiff's Third Cause of Action of First Amendment Retaliation against Defendants Gregory and Buske arising out of the denial of Plaintiff's 2014/2015 participation in the S2S Program during sabbatical or full return to participation in the program following sabbatical be **DENIED;** but in all other respects, Defendants' Motion to Dismiss be **GRANTED,** as to Plaintiff's Third Cause of Action which should therefore, be **DISMISSED without prejudice;**

vi. Defendants' Motion to Dismiss Plaintiff's Fourth Cause of Action of First Amendment Retaliation against Defendants Gregory and Zhao arising out of reclassification of students in Plaintiff's Spring 2016 STAT 193 class be **DENIED;**

vii. Defendants' Motion to Dismiss Plaintiff's Fifth Cause of Action of First Amendment Retaliation against Defendants Gregory and Zhao arising out of adversely scheduling Plaintiff's Spring 2016, class schedule be **DENIED;** but in all other respects, Defendants' Motion to Dismiss be **GRANTED**, as to Plaintiff's Fifth Cause of Action which should therefore be **DISMISSED without prejudice;**

viii. Defendants' Motion to Dismiss Plaintiff's Sixth Cause of Action against Defendant Gregory alleging discrimination against him on the basis of his race or national origin arising out of scheduling Summer 2016 classes be **DENIED;**

ix. Defendants' Motion to Dismiss Plaintiff's Seventh Cause of Action of First Amendment Retaliation against Defendants Gregory, Zhao, Buske, and Hanszek-Brill be **DENIED;**

x. Defendants' Motion to Dismiss Plaintiff's Eighth Cause of Action be **GRANTED**, and the cause of action should therefore be **DISMISSED without prejudice;**

    **xi.**  Defendants' Motion to Dismiss Plaintiff's Ninth Cause of Action be **GRANTED**, and the cause of action should therefore be **DISMISSED without prejudice;** and

    **xii.**  Defendant's Motion to Dismiss Plaintiff's Amended Complaint on the basis of Qualified Immunity be **DENIED**.


Dated: September 25, 2017               s/Leo I. Brisbois
                                             The Honorable Leo I. Brisbois
                                             United States Magistrate Judge


# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).