UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Leonard C. Onyiah,

      Plaintiff,

v.

Peiyi Zhao, Daniel Gregory,
Dale Buske, and Melissa
Hanszek-Brill,

      Defendants.

File No. 16-cv-04111 (ECT/LIB)

**OPINION AND ORDER**

---

Kenechukwu C. Okoli, Law Offices of K.C. Okoli, P.C., New York, NY; and Jordan W. Anderson and Boris Parker, Parker & Wenner, P.A., Minneapolis, MN for Plaintiff Leonard C. Onyiah.

Kathryn Fodness, Minnesota Attorney General's Office, St. Paul, MN for Defendants Peiyi Zhao, Daniel Gregory, Dale Buske, and Melissa Hanszek-Brill.

---

Plaintiff Leonard C. Onyiah is a statistics professor at St. Cloud State University. He alleges that Defendants—four of his colleagues at Saint Cloud State University—retaliated against him for exercising his legal rights and discriminated against him on the basis of his national origin and race when they made or participated in decisions regarding his teaching assignments and related matters. Onyiah asserts his claims under 42 U.S.C. § 1983 seeking to recover damages for violations of his rights under 42 U.S.C. § 1981 and the Fourteenth Amendment's Equal Protection Clause. Defendants have filed a summary-judgment motion, and that motion will be granted because Onyiah fails as a matter of law to identify facts establishing essential elements of his claims.

I

The basis of Onyiah's retaliation claims has changed from a First Amendment retaliation theory to one under 42 U.S.C. § 1981.  Before he responded to Defendants' summary-judgment motion, Onyiah seemed to allege that Defendants had retaliated against him for exercising his First Amendment rights.  That is how the Court has understood Onyiah's retaliation claims.  *See, e.g.*, Order at 2–3 (May 13, 2019) (Brisbois, M.J.) [ECF No. 111].  And that is how Defendants reasonably understood and briefed the claims.  Def. Mem. at 12–19.  The gist of Onyiah's First Amendment retaliation claims seemed straightforward.  In 2008, Onyiah sued Saint Cloud State University and the Board of Trustees of Minnesota State Colleges and Universities alleging that he had been discriminated against based on his race, national origin, and age.  *See Onyiah v. St. Cloud State Univ.*, No. 08-4948 (MJD/LIB), 2011 WL 1868794 (D. Minn. May 16, 2011) (entering summary judgment against Onyiah's claims), *aff'd*, 684 F.3d 711 (8th Cir. 2012), *cert. denied*, 568 U.S 1213 (2013).  Onyiah also filed employment discrimination complaints internally at Saint Cloud State University.  Second Am. Compl. ¶¶ 19, 21 [ECF No. 52].  Onyiah claimed that Defendants had taken adverse action with respect to his employment in retaliation for his 2008 lawsuit and internal complaints.  But in response to Defendants' summary-judgment motion, Onyiah abandoned his First Amendment retaliation theory.  Pl. Opp'n Mem. at 5 [ECF No. 109]; Tr. at 10–12.  Onyiah instead identified 42 U.S.C. § 1981 as the basis for his retaliation claims.  It is reasonable to question whether Onyiah's complaint actually pleads a § 1981 retaliation claim.  It nowhere mentions that theory explicitly.  At the same time, however, it cites § 1981 (albeit

just once on the first page), describes activities arguably protected under § 1981, and then alleges on several occasions (albeit without reference to § 1981) that Defendants retaliated against Onyiah for engaging in those activities. For these reasons, it seems fair to understand Onyiah's complaint to assert this claim.

"A federal action to enforce rights under § 1981 against a state actor may only be brought pursuant to § 1983." *Artis v. Francis Howell N. Band Booster Ass'n*, 161 F.3d 1178, 1181 (8th Cir. 1998).[1] Section 1981 protects the right of all persons "to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The "term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). "The protections offered by § 1981 include a government employee's right to be free from racial harassment" and discrimination. *Ellis v. Houston*, 742 F.3d 307, 318 (8th Cir. 2014). "The Supreme Court has explained that it is 'well embedded' that § 1981 also allows for retaliation claims." *Id.* at 319 (quoting *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451 (2008)). "Such claims are analyzed under the same *McDonnell Douglas* burden shifting framework as Title VII claims." *Ellis*, 742 F.3d at 319. To prove a prima facie case of retaliation in the absence of direct evidence, a plaintiff must show that (1) he engaged in protected activity, (2)

---

[1] For this reason, claims Onyiah asserted directly under § 1981 were dismissed almost two years ago. Order ¶ 3(a) (Oct. 11, 2017) (Tunheim, C.J., adopting Report and Recommendation of Brisbois, M.J.) [ECF No. 39].

subsequent materially adverse action was taken against him, and (3) the materially adverse actions were causally linked to his protected activity. *Id.* at 322–23. "'[S]tatutorily protected activity' for a retaliation claim under § 1981 is conduct covered by Title VII." *Sayger v. Riceland Foods, Inc.*, 735 F.3d 1025, 1031 (8th Cir. 2013). Conduct is protected "if it qualifies as participation 'in any manner' in [a] Title VII 'investigation, proceeding, or hearing.'" *Hayes v. Patterson*, 366 Fed. App'x 711, at *1 (8th Cir. 2010) (quoting *Brower v. Runyon*, 178 F.3d 1002, 1005 (8th Cir. 1999)). An action is "materially adverse" if it "would dissuade a reasonable worker from making or supporting a charge of discrimination." *Ellis*, 742 F.3d at 323 (quotations omitted). To establish causation, a § 1981 plaintiff must show that "'the desire to retaliate was the but for cause of'" the adverse action. *Wright v. St. Vincent Health Sys.*, 730 F.3d 732, 737 (8th Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013)); *see also Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008) ("To make out a retaliation claim, the plaintiff must show that the protected conduct was a 'determinative—not merely a motivating—factor' in the employer's adverse employment decision." (quoting *Carrington v. City of Des Moines*, 481 F.3d 1046, 1053 (8th Cir. 2007))). If these elements are shown, then a defendant must show a "'legitimate, non-retaliatory reason' for the adverse action." *Sayger*, 735 F.3d at 1031 (quoting *Takele v. Mayo Clinic*, 576 F.3d 834, 839 (8th Cir. 2009)). If that burden is met, then a plaintiff must show that the proffered reason was pretextual. *Sayger*, 735 F.3d at 1031. "[A] defendant's personal liability under §§ 1981 and 1983 requires proof of intentional discrimination *by that defendant.*" *Ellis*, 742 F.3d at 327 (Loken, J., concurring).

Onyiah identifies actions that he says were materially adverse and warrant the denial of Defendants' summary-judgment motion with respect to his § 1981 retaliation claims, but as a matter of law the actions Onyiah identifies and the record evidence regarding these actions do not show that Defendants took materially adverse action against him. The evidence shows that some of the actions Onyiah identifies did not happen as he alleges. Onyiah alleges that Defendants reassigned one of his classes to a "white female faculty member with less experience than him." ECF No. 111 at 2; Pl. Opp. Mem. at 3. The evidence shows, not that one of Onyiah's courses was "reassigned" to another professor, but that Onyiah's suggestion to reassign courses both to and away from him was not accepted. When a course (STAT 417) scheduled to be taught by one of his colleagues (Nancy Sundheim) during the Spring 2014 semester became full and had a growing waitlist, Onyiah was asked in December 2013 about teaching a second section of the course. Buske Decl. ¶¶ 4–5, Ex. A [ECF No. 93]. Onyiah objected to teaching a second section of the course on short notice and suggested reassigning courses to address the problem. *Id.* Rather than accepting Onyiah's reassignment suggestion, the class size for Sundheim's STAT 417 course was increased, and Onyiah was not required to teach a second section of the course. *Id.* ¶ 5. Onyiah also alleges that his teaching schedule for the Spring 2016 semester was created without his input, but the record shows he was consulted. ECF No. 111 at 2; Zhao Decl. ¶ 5, Ex. A [ECF No. 102]. The record shows that one action Onyiah cites to support his retaliation claim was not taken by any Defendant. Specifically, the decision not to permit Onyiah while on sabbatical to participate in a program that allowed high-school students to take college-level courses

(the "S2S program") was made by the Dean of the Center for Continuing Studies, John Burgeson. Buske Decl. ¶ 9, Ex. E. Onyiah identifies no record evidence showing that any Defendant participated in making this decision.

Regardless, each of the actions Onyiah identifies concerns his teaching schedule or issues related directly to his teaching schedule, and decisions concerning a teaching schedule may show materially adverse action only if the evidence indicates that a plaintiff "suffered a material disadvantage as a result of the action." *Recio v. Creighton Univ.*, 521 F.3d 934, 940 (8th Cir. 2008). The mere fact that scheduling decisions are unwelcome or disallow a plaintiff "from maintaining [his] preferred teaching schedule" are insufficient. *Id.* Onyiah alleges no material disadvantage with respect to his teaching assignments. Onyiah is correct that he was scheduled to teach back-to-back classes on Tuesdays and Thursdays during the Spring 2016 semester and that this was not his preferred schedule, Zhao Decl. ¶ 4, but he identifies no disadvantage resulting from this arrangement. Onyiah also is correct that a course he was scheduled to teach in the Summer 2018 semester was canceled. Buske Decl. ¶¶ 13–18. Again, Onyiah identifies no disadvantage resulting from the cancellation of this course. Nowhere in his brief in opposition to Defendants' summary-judgment motion does Onyiah cite record evidence showing that the complained-of teaching assignments adversely affected his compensation. Nor does he assert that these assignments so hindered his professional career that they might reasonably be characterized as materially adverse. *See Recio*, 521 F.3d at 941. In his opposition brief, Onyiah asserts that "every retaliatory action which Plaintiff alleges in this action is predicated on the Defendants' action in maligning Plaintiff's textbook and taking every action they could to

6

prevent Plaintiff from using the book." Pl. Opp. Mem. at 16. This assertion is unsupported by any citation to record evidence. Fed. R. Civ. P. 56(c)(1)(A). An independent review of the record has turned up no evidence supporting this assertion. And Onyiah does not describe how his teaching assignments caused him to suffer a material disadvantage with respect to his textbook.

If any of the actions Onyiah identifies could be considered materially adverse, he identifies no clear theory or record evidence showing that his protected activity caused the materially adverse actions to be taken. As a matter of law, there is no temporal connection between Onyiah's protected activity and the actions he identifies. Onyiah commenced his previous lawsuit in 2008, and it concluded in 2013. The most recent internal discrimination complaint Onyiah identifies filing prior to this lawsuit occurred in October 2013. Second Am. Compl. ¶¶ 19–22. Onyiah brought this case in December 2016. Compl. [ECF. No. 1]. The actions Onyiah identifies—which the evidence shows actually occurred—took place in the Spring 2016 semester and the Summer 2018 semester. Regardless of what protected activity one associates with which assertedly adverse action, the temporal connection is not close enough to alone raise an inference of causation. *Recio*, 521 F.3d at 941 (citing *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 915 (8th Cir. 2006) and *Weger v. City of Ladue*, 500 F.3d 710, 726 (8th Cir. 2007)). Onyiah's opposition brief identifies no other discernable theory of causation.[2]

---

[2] Though Onyiah alleges in his complaint "[u]pon information and belief" that the cancellation of his Summer 2018 semester course was "in unlawful retaliation for this pending lawsuit" and was made "on the basis of his race or national origin," Second Am.

7

If Onyiah had established a prima facie retaliation claim, summary judgment against his § 1981 retaliation claim would remain appropriate because Defendants have shown legitimate, non-retaliatory reasons for their actions, and Onyiah has not shown Defendants' proffered reasons were pretextual. Defendants have cited extensive materials in the record, including deposition testimony, affidavits, and documents showing legitimate, non-discriminatory reasons for their challenged actions. For example, in his declaration, Buske explained that his scheduling decisions were driven by several factors including student interest in having a choice of instructors, Buske Decl. ¶ 3, student need to have courses available that were necessary to graduate, *Id.* ¶ 4, enrollment in courses, *Id.*, student expectations once they had registered, *Id.* at ¶ 5, and anticipated student demand and projected enrollment for particular courses, *Id.* ¶ 13.

In his opposition brief, Onyiah seems to raise two arguments to show pretext, but neither fairly responds to the record evidence identified by Defendants. First, he says that Buske's declaration contradicts his deposition testimony and that this shows "the conduct of a guilty mind." Pl. Opp. Mem. at 18. This is not a reasonable characterization of Buske's testimony. In his deposition, Onyiah's counsel asked Buske: "As you sit here today, do you know how [Nancy Sundheim] came to be assigned to teach Stat 193 in spring of 2014?" Okoli Decl., Ex. 3 at 6 [ECF No. 108]. Buske responded: "No." *Id.* Onyiah's counsel did not attempt to refresh Buske's recollection by introducing exhibits or asking additional questions. In his declaration filed in connection with Defendants' summary-

---

Compl. ¶¶ 159–60, he does not defend or advance these allegations in his summary-judgment response.

judgment motion, Buske described his drafting of the schedule for the Spring 2014 semester that resulted in Sundheim teaching STAT 193. Buske Decl. ¶¶ 3–4. Buske's inability to recall during his deposition the facts described in his later declaration neither undermines his declaration nor suggests pretext. Buske's declaration testimony is supported by a contemporaneous email exchange with Onyiah explaining the scheduling process, *Id.* ¶ 4, and Onyiah identifies no record evidence to undermine Buske's account. Onyiah does not contend, and nothing about Buske's declaration shows, that the declaration violates Fed. R. Civ. P. 56(c)(4), which requires a declaration to "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The Eighth Circuit has made clear that a declaration filed in connection with a summary-judgment motion appropriately may be considered when it is consistent with prior deposition testimony or simply adds more detailed information. *Bass v. City of Sioux Falls*, 232 F.3d 615, 618 (8th Cir. 1999). That is the case here.

Second, Onyiah asserts "[f]or details of how Plaintiff showed that the Defendants' decisions were a pretext for retaliation, see Onyiah Declaration filed herewith." Pl. Opp. Mem. at 18. Onyiah's declaration does not create a genuine issue of material fact regarding pretext. The declaration is 31 pages and 130 paragraphs long. Onyiah Decl. [ECF No. 107] Citing a document of that length without identifying particular pages or paragraphs violates Fed. R. Civ. P. 56(c)(1)(A). The declaration is long on invective; it repeatedly accuses Defendants of racist and retaliatory motives. But at the summary-judgment phase, accusations must surrender to evidence. Onyiah cites no evidence to support his accusation

that Defendants' actions were pretext for retaliation. *See Sims v. Ford Motor Co.*, No. 1:05CV2336, 2007 WL 9753723, at *7 (N.D. Ohio Sept. 27, 2007) (finding a plaintiff's affidavit insufficient to show pretext because it "read[] much like her complaint," contained "conclusory allegations rather than attestations of specific facts demonstrating discriminatory conduct," and established only that the plaintiff believed she was a victim of discrimination). Onyiah's declaration does not create a triable issue of fact regarding pretext.

II

The law governing Onyiah's § 1983 race-discrimination claims is similar to the law governing his § 1981 retaliation claims. As the Eighth Circuit has explained:

> A plaintiff bringing a race discrimination claim may prove his case "by providing direct evidence of discrimination or by creating an inference of unlawful discrimination through the *McDonnell Douglas* analysis." *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012) (citation omitted). [If a plaintiff] present[s] no direct evidence of discrimination . . . "he must establish [race] discrimination through the *McDonnell Douglas* burden-shifting framework." *Twiggs v. Selig,* 679 F.3d 990, 993 (8th Cir. 2012) (citation omitted). [He] "must show (1) he is a member of a protected class, (2) he met his employer's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination." *Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1019 (8th Cir. 2011) (citation omitted). [A plaintiff] may "satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class." *Id.* (citation omitted). The state defendants must provide "a non-discriminatory, legitimate justification for [their] conduct, which rebuts the employee's prima facie case." *Bone,* 686 F.3d at 954 (quotation and citation omitted). "Once the [state defendants] provide[ ] this reason, the presumption of discrimination disappears, requiring [a plaintiff] to prove

>                that the proffered justification is merely a pretext for
>                discrimination." *Twiggs,* 679 F.3d at 993 (quotation and
>                citation omitted).

*Burton v. Ark. Sec'y of State*, 737 F.3d 1219, 1229 (8th Cir. 2013).

In his brief in opposition to Defendants' summary-judgment motion, Onyiah identifies one factual predicate for this claim: the denial of his request for "the assignment of Learning Assistants in 2014." Pl. Opp'n Mem. at 19. As a matter of law, this decision does not amount to an adverse employment action. The Parties do not dispute the basic role of a learning assistant at St. Cloud State University. In his declaration, Provost and Vice President for Academic Affairs Daniel Gregory testifies: "A learning assistant is an undergraduate student who, through guidance of course instructors and a special pedagogy course, facilitates discussion among groups of students in a variety of classroom settings." Gregory Decl. ¶ 10 [ECF No. 96]. Onyiah does not dispute this description. "An adverse employment action is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." *Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 804 (8th Cir. 2013). "'Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage, do not rise to the level of an adverse employment action.'" *Wilkie v. Dep't of Health & Human Servs.*, 638 F.3d 944, 955 (8th Cir. 2011) (quoting *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 926 (8th Cir. 2007); *see also Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 671 (8th Cir. 2006) ("Mere inconvenience without any decrease

in title, salary, or benefits or that results only in minor changes in working conditions does not meet this standard." (quotation omitted)). Federal courts have determined that the denial of graduate research or teacher assistants do not show adverse employment action. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) ("[D]epriv[ation]" of "a graduate research assistant . . . simply do[es] not amount to [an] adverse employment action[]."); *Cox-Fuenzalida v. Okla. Bd. of Regents of Univ. of Okla.*, No. CV-12-1279-R, 2014 WL 1901061, at *4–5 (W.D. Okla. May 13, 2014) ("[T]he lack of teaching assistant support . . . was not materially adverse."); *McNutt v. Nasca*, No. 1:10-CV-1301 MAD/RFT, 2013 WL 209469, at *21 (N.D.N.Y. Jan. 17, 2013) ("Plaintiff claims that defendant withdrew the offer of [assigning a] Teaching Assistant for" the course plaintiff was teaching but "plaintiff cannot establish that she suffered from an adverse action."). Onyiah identifies no particular feature or role played by learning assistants at St. Cloud State University that might justify reaching a different result here.[3]

Onyiah alleges one additional factual basis for his race-discrimination claim in his complaint, though he does not rely on it in his brief in opposition to Defendants' summary-judgment motion. Specifically, Onyiah alleges that Defendant Gregory refused to assign Onyiah to teach on-campus courses during the Summer 2016 semester, though he assigned

---

[3] If the denial of learning assistants to Onyiah in 2014 was an adverse action, Defendants have identified a legitimate, non-discriminatory justification for this decision. "SCSU has limited money available to assign learning assistants. Each professor cannot be assigned learning assistants." Gregory Decl. ¶ 10. Defendants maintain that they denied Onyiah's application for a learning assistant based on the enrollment level in his course, the undetailed assertions in his application, and the proposed use of learning assistants in a way inconsistent with the goals of the program. Hanszek-Brill Decl. ¶¶ 4–5 [ECF No. 100]. Onyiah has not tried to show that this justification is pretextual.

12

Buske and Hanszek-Brill to teach courses that semester. Second Am. Compl. ¶¶ 95–99. The undisputed evidence shows that Gregory was not involved in this decision in a way that could generate liability under § 1983. "'Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish the personal liability of supervisory defendants, a plaintiff must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [the plaintiff's] constitutional rights.'" *Garrison v. Minn. Dep't of Revenue*, No. 16-cv-2866 (WMW/HB), 2017 WL 3382778, at *3 (D. Minn. Aug. 7, 2017) (alteration in original) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("In a § 1983 suit . . . —where masters do not answer for the torts of their servants—the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Plaintiff must identify facts showing that the supervisory defendant "directly participated in any constitutional violation, or failed to train or supervise any subordinate official who caused a violation after receiving notice of a pattern of unconstitutional acts." *Seenyur v. Hammer*, No. 14-cv-4250 MJD/BRT, 2015 WL 1815858, at *3 (D. Minn. Apr. 22, 2015) (citations omitted); *see also Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983) (explaining that a warden's general responsibility for supervising the operations of a prison is insufficient to establish liability under § 1983). If a plaintiff "cannot establish personal involvement of the supervisory defendant[], [he is] entitled to judgment as a matter of law under section 1983." *Mayorga*, 442 F.3d at 1132. Here, Gregory asserts that he "did not identify the faculty members who would be teaching

or the courses that they would be teaching" during the Summer 2016 semester. Gregory Decl. ¶ 18. His "role was limited to approving the schedule that the Department of Mathematics & Statistics proposed to [him]." *Id.* There is no indication that Gregory knowingly acquiesced to any deprivation of Onyiah's rights. Onyiah does not address this evidence in his submissions, so it is left undisputed.

## ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' motion for summary judgment [ECF No. 88] is **GRANTED**; and

2. This action is **DISMISSED WITH PREJUDICE**.

   **LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: September 5, 2019          s/ Eric C. Tostrud
                                  Eric C. Tostrud
                                  United States District Court